The petitioner claims to be exempt from military service in the army of the Confederate States upon the ground that he is a policeman of the city of Raleigh. His claim is resisted in the return of the defendant upon the allegation that the petitioner is not a policeman, but only a contractor to keep the city pumps in order.
The testimony of the mayor of the city, together with the other proofs taken and filed in the cause, satisfy us that the petitioner is one of the city police, though, in addition to his duties as such, he has had assigned *Page 263 
to him the charge of keeping the pumps in repair. Upon the facts thus appearing from the pleadings and proofs, the question arises whether the petitioner is entitled to exemption from conscription. This is a question of law, and it is our duty now to proceed to its consideration.
It is now generally if not universally conceded that the (411) Confederate Congress have no power to order the conscription of State officers. The principle is well expressed by the Supreme Court of Appeals of Virginia, in the opinion given in the case of Burroughs v.Peyton, 16 Gratt., 470, and we express our full concurrence in it. "The State governments are an essential part of our political system, for upon the separate and independent sovereignty of the States the foundation of our confederation rests. All powers not delegated to the Confederate States by the Constitution, nor prohibited by it to the State, are reserved to States respectively, or to the people thereof"; and the Confederate States guarantee to each State a republican form of government.
It is absurd to suppose that the Government of the Confederate States can rightfully destroy the States which created it; and all the powers conferred on it must be understood to have been given with the limitation that in exercising them nothing shall be done to interfere with the independent exercise of its sovereign powers by each State. Congress can have no right, therefore, to deprive a State of the services of any officer necessary to the action of its government; and the State itself is the sole judge as to the officers that are necessary for that purpose.
We are not aware that the Confederate Congress have ever set up claim to the exercise of a power inconsistent with this fundamental principle of State sovereignty. On the contrary, in all the acts it has passed granting exemptions from conscription it has expressly mentioned, in some form or other, State officers as being entitled to exemption. Thus, in the act of 21 April, 1862, "all judicial and executive officers of State governments" are exempted. In the act of 11 October, 1862, which repeals that of April, the officers, judicial and executive, of the State governments are again declared to be exempted. The act of 1 May, 1863, provides that in addition to the State officers exempted by (412) the act of 11 October, 1862, there "shall be exempted all State officers whom the Governor of any State may claim to have exempted for the due administration of the government and laws thereof; but this exemption shall not continue in any State after the adjournment of the next regular session of its Legislature, unless such Legislature shall by law exempt them from service in the provisional army of the Confederate States."
It is unnecessary to consider the effect of these exemption acts, because they are all repealed by the act of 17 February, 1864, and State officers were exempted in the following terms: "The members of the *Page 264 
several State Legislatures and such other State officers as the Governors of the respective States may certify to be necessary for the proper administration of the State Government." If the petitioner be a State officer, and had he produced any such certificate in his behalf from the Governor of this State, we must presume that the Confederate officers would have admitted it, and have exempted him accordingly; but he has failed to produce any such certificate, and yet he insists, nevertheless, that his right to exemption is established by the action of our General Assembly. That body, by an act ratified 14 December, 1863, mentions several officers as "necessary to carry on the operations of the State Government," for whom claims had been made and obtained under the act of Congress of May, 1863, and then itself claims and exempts them from conscription. Among the officers thus claimed to be exempt are the "mayor and police of Raleigh." See laws of extra session in December, 1863, ch. 14. That same body, at its extra session in May, 1864, by a resolution ratified 28 May, "demands" the exemption of the same, together with some other officers, prefacing it with a preamble declaring "that the fearless and free discharge of the officers of the State is (413) essential to the preservation of its sovereignty," and that "Congress has no power to conscript State officers."
Has the Legislature of the State the right to "demand" these exemptions? It is very decidedly our opinion that it has, and that it has to the exclusion of every other department of the State Government. It is clear beyond all question that, within the limits of the written Constitution which the people of the State have imposed on the Government, the legislative power is the supreme power in the State. Among its vast powers of legislation, which are unlimited and unrestricted except by the Constitution, is that of ascertaining what officers, in addition to those specified in the Constitution, are necessary for the efficient management of the affairs of the State, and then of appointing the officers and prescribing their duties. The powers of the other two great departments of Government are very different. To the judiciary is assigned the power of expounding the Constitution and laws, while the Executive has, solely, the power to enforce their faithful execution. From this, as it seems to us, it follows as a logical sequence that when it is shown that each State is the sole judge as to the officers who are necessary to the action of its government, its Legislature, and its Legislature alone, is the organ by which its judgment is to be ascertained and made known. It may well be that the Legislature can select and appoint the Governor as its agent to certify its decision, but we are unable to find, among the powers given to theConfederate Government, any authority to confer upon the Governor of the State the power to decide, and then to certify his decision, as to who are the necessary State officers. *Page 265 
The conclusion to which this course of reasoning leads us is (414) that the petitioner is entitled to his discharge, provided he is such an officer as the Legislature has the power to exempt as being necessary in the administration of the laws of the State. Police are defined by Webster to be "a body of civil officers, especially in cities, for enforcing laws within their chartered limits must be a matter of great importance parts, of the organization of the State; hence the enforcement of the laws within their chartered limits must be a matter of great importance to the weal of the State itself. It follows, as a necessary consequence, that the police of all the larger towns, and especially of the capital of a State, must be deemed essential to the full, complete, and beneficial action of the State Government.
The conclusion is that there is no error in the judgment rendered by the court below.
Judgment for the petitioner.